16031

### LITTLE v. ATLANTIC COAST LINE R. CO.
(46 S. E. (2d) 59)

Messrs. *J. Arthur Knight,* of Chesterfield, and *Woods & Woods,* of Marion, for Appellant,

Messrs. *James E. Leppard, Wm. P. Gulledge* and *George K. Laney,* all of Chesterfield, for Respondent,

January 15, 1948.

STUKES, J.: Respondent lost seven bales of cotton in the fire described in the decision of *Laney v. Atlantic Coast*

*Line R. Co.,* S. C., 45 S. E. (2d) 184, filed Nov. 11, 1947. The present case was tried after the latter and resulted in verdict and judgment for respondent in the amount of $665.19. There need be little additional factual statement; reference may be had to the cited report of the *Laney case.*

The difference in the evidence at the trials was insufficient to require different rulings upon the motions for directed verdict, judgment *non obstante veredicto* and new trial. They were therefore also properly refused in this case. Appellant produced a new colored woman witness on the origin of the fire but her testimony was weakened, to say the least, by contradiction by the reply evidence of respondent. It need not be discussed in detail. The issues of fact remained for the jury as in the *Laney case.*

The latter included the question of whether appellant was absolved from liability under the fire damage statute, Sec. 8362 of the Code of 1942, by reason of notices on the platform, in the face of the overwhelming evidence of contrary custom. The agent in charge of the railroad station testified upon the point as follows: "We had a couple of signs. They were placed underneath the covered portions of the platform. On those signs, the best of my recollection, read that: 'This company is not responsible for cotton or other property placed on this platform unless covered by a bill of lading.' " Moreover he denied knowledge of the fact that respondent's cotton was on the open or uncovered portion of the platform where it had been from the time it was ginned in December until the fire on the following April 27th. He further said that the cotton buyers were required to sign a certain company form No. 745 which was in effect a release of the railroad company from liability for loss of, or damage to, their unshipped cotton on the premises.

Appellant had erected and maintained the large cotton platform alongside its track and near the freight depot, which measured two hundred and fifty feet in length and thirty-eight feet in width, part under roof and part not, for the purpose of shipping cotton, and permitted the public cotton

weigher to weigh the bales of cotton as they came from the gin; he kept his scales there. Farmer after farmer testified that it had been the custom for many years to haul their cotton after ginning and place it on the platform for weighing and selling, quoting one of them: "It is a customary rule there in Cheraw if you have got any amount of cotton to put it on this platform for the buyers to sample," and this without protest from appellant; and some of it remained there unsold for substantial periods of time. The duties of appellant's station agent and his assistant required their presence from time to time on the platform in connection with the shipment of cotton and it would be quite unreasonable to conclude that they were without knowledge that the cotton of someone other than shippers was on the platform, particularly the present cotton which had been there for months. There was testimony that the seven bales of respondent which were burned had gin tags on them which bore her name. It appears that this cotton was omitted by oversight from a sale of a large lot of other cotton of respondent and she called on the manager of the gin, where she had ginned about two hundred bales, to help her locate it. He went with her to appellant's platform and found it all tagged with her name, where it remained until the fire.

The foregoing brief sketch of the testimony relevant to this question will suffice to show that whatever appellant's original intention was with respect to the use by the public of the platform for storage, it permitted the practice as illustrated by the facts of this case. The evidence shows that appellant was in competition with another railroad company in the shipment of cotton by freight from Cheraw, which may explain its accommodation of the public in this fashion. Reverting to the agent's testimony concerning the content of the signs under the roofed portion of the platform, it is noted that his statement, which was the only evidence of them, was rather indefinite, and the recited terms of the contents of the signs are not at all clear. The responsibility

here asserted is that which arises by reason of the applicable statute. The issue was properly submitted to the jury.

There are two assignments of error relating to the court's instructions to the jury concerning the storage of the cotton on the platform. The first complains of a charge requested by respondent, which appears in the record as follows: "I charge you that express consent has been defined as consent directly given either verbally or in writing, and implied consent may be manifested by signs, acts or facts or by inaction or any sign which raises presumption that the consent has been given." It was taken from page 402 of the Third Edition of Black's Dictionary and should have read as follows: "Express consent has been defined as 'consent directly given, either verbally or in writing.' An implied consent may be manifested by signs, actions or facts, or by inaction or silence, which raise a presumption that the consent has been given." We quote the entire argument of appellnat on this question, from the brief: "We think it clear that the jury reasonably could have construed this charge to mean that mere inaction on the part of the defendant would be sufficient to imply consent, regardless of the circumstances or defendant's knowledge of the placing of plaintiff's cotton on its platform. If this charge was reasonably susceptible of such a construction, as we think it was, it was erroneous and could not have been other than highly prejudicial."

Necessary in the appraisal of this exception and argument is consideration of the pertinent evidence and the entire charge to the jury. The evidence relating to the point has already been briefly but sufficiently reviewed. There was much testimony of more than "inaction" on the part of appellant. Indeed, the evidence appears to conclusively show that respondent acted with respect to her cotton in accord with long established custom which was impliedly approved by appellant. In this light, granting the construction contended for, there was no prejudice to appellant, if error. The

main charge fully and fairly covered the law applicable to the facts which the evidence tended to establish.

The other imputation of error in the instructions, and the final question raised in the appeal, arises from the court's refusal of the following charge requested by appellant: "If you should find from the testimony that the defendant railroad company posted notices informing the public, including the plaintiff or her agents, that the company would not be responsible for cotton placed on its platform unless covered by a bill of lading, then you could not find that the railroad company consented for the plaintiff to place cotton not covered by a bill of lading on its platform from the mere fact that the company failed to object when its notice was disregarded. In such a case it would not be the duty of the company to hunt up each person known by its agents to have disregarded its public notice and again notify him or her of its refusal to consent to the placing of cotton on the platform not covered by a bill of lading".

The court refused the request, indicating that he thought it a charge on the facts, and said to the jury: "I do charge in connection with that request, however, that a railroad company has the right to make rules and regulations and give notice thereof posting notices on the property, and to generally prescribe the manner of the use of the property by the public. Those things, gentlemen, if proven may be taken into consideration by the jury in determining the question of whether or not consent was given for the placing of property in question upon the platform of the defendant". Consideration compels the conclusion that the trial judge was correct. The request was drawn from the decision of this court in *Yarborough v. Southern Railway*, 78 S. C. 103, 58 S. E. 936, 937. The context shows the inapplicability of the quotation to the facts of this case. The court said in the opinion: "According to the testimony adduced by the defendant, there was conspicuously posted a notice forbidding all persons to place cotton on the premises of the company until tendered

and accepted for shipment. It was for the jury to say whether the paper was so posted as to give notice to all shippers". We need compare no further than to point out that the notice in the *Yarborough case* was quite different from that in this. Moreover, that case was remanded for a new trial by jury, it being said that there obviously was testimony from which the jury might infer consent of the railroad company to the cotton being placed on its premises. Again, the facts here, unlike the *Yarborough case,* present a public weighing and selling platform maintained by appellant which may be fairly said under the evidence to have existed with the knowledge and the implied consent of appellant, including the feature that the farmers of the community habitually used the platform for the temporary storage of their unsold cotton.

The exceptions are overruled and the judgment affirmed.

BAKER, CJ., and FISHBURNE, TAYLOR and OXNER, JJ., concur.